AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 1-7-2022)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | | |
|---|---|---|---|
| In the Matter of the Search of | ) | | |
| | ) | | |
| Information associated with One (1) Target | ) | Case No. | **MJ22-376** |
| Accounts/Identifiers, for Investigation of 21 | ) | | |
| U.S.C. §§ 841 & 846 and Other Offenses | ) | | |

### APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A, located in: an unknown district, there is now concealed property and evidence described in Attachment B.  This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒  evidence of a crime;

☒  contraband, fruits of crime, or other items illegally possessed;

☒  property designed for use, intended for use, or used in committing a crime;

☒  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841 & 846 | Distribution of controlled substances and conspiracy to distribute controlled substances. |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒  Delayed notice of ___ days (give exact ending date if more than 30 days: <u>November 13, 2022</u>) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Joseph T. Cheng, DEA Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone/

Date: <u>August 15, 2022</u>

_____
*Judge's signature*

Paula McCandlis, United States Magistrate Judge
*Printed name and title*

City and state: <u>Bellingham, Washington</u>

USAO 2021R1079

# ATTACHMENT A

## Property to Be Searched and Subscriber/Subject Information

1.      Records and information associated with the cellular phone assigned call number 831-225-4486, with listed subscriber "ROMEO GONZALEZ PEREZ" (the "Target Cell Phone"), that are in the custody or control of AT&T Wireless, a company headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.  The subscriber/customer of the Target Cell Phone is "ROMEO GONZALEZ PEREZ".  The identity of the person who is the subject of the criminal investigation is unknown.

1.      The Target Cell Phone.

2.      The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data , and prospective E-911/GPS and cell site triangulation information regarding the Target Cell Phone.  **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

**I.    Section I:  Information to be Disclosed by AT&T**

1.    **Subscriber/Account Information.**  The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

a.    Names (including subscriber names, user names, and screen names);

b.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.    Local and long distance telephone connection records from July 27, 2020, to the present;

d.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions from July 27, 2020, to the present;

e.    Length of service (including start date) and types of service utilized;

f.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

      g.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      h.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

2.   **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 days.**

      a.    AT&T shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

      (i)    IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

      (ii)    Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

      (iii)    IP addresses of any websites or other servers to which the cell phone device or devices connected; and

(iv)     Source and destination telephone numbers and email
addresses.

b.     On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, AT&T shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices:  published or non-published subscriber names and addresses, including billing addresses.

3.     **Historical Cell Site Location Information.**

a.     All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from July 27, 2020, to the present, including:

i.     the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.     historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.  This information is to be provided irrespective of the application, name, or report utilized by the AT&T.  Accordingly, this information includes the following data sets to the extent that they are collected by the AT&T: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.     The physical address and coverage maps of cell towers used by the Target Cell Phone.

4.     **Prospective Cell Site Location Information.**

a.     All information about the location of the Target Cell Phone described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: precise location information, as well as all data about which

"cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.  This information also includes the following data sets to the extent that they are collected by the AT&T: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.     The physical address and coverage maps of cell towers used by the Target Cell Phone.

5.     **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.     All information about the location of the Target Cell Phone described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.     The physical address and coverage maps of cell towers used by the Target Cell Phone.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government pursuant to this warrant.  In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services.  The government shall compensate AT&T for reasonable expenses incurred in furnishing such

Attachment B -- PAGE 4

USAO 2021R1079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

facilities or assistance.

**II.**    **Section II:  Information to Be Seized by the Government**

1.    All information described above in Section I that constitutes evidence of violations of 21 USC § § 841 & 846 involving unidentified subject "Paco".

2.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.    Location Information regarding the Target Cell Phone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the AT&T in order to locate the things particularly described in this Warrant.

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON          )
                                                   )          ss
COUNTY OF WHATCOM          )

I, Joseph Cheng being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

### Application for a Tracking Warrant for a Target Telephone

1.     I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephone (hereinafter, the "**Target Telephone**"):

a.     **Target Telephone 2A (TT2A)**, assigned phone number 831-225-4486, who's service provider is AT&T Wireless ("AT&T"), a wireless telephone service provider located at 11760 U.S. Highway 1, North Palm Beach, FL 33408.  **TT2A** is subscribed to "ROMEO GONZALEZ PEREZ" at "333 W LAUREL DR , Salinas, CA 93906" with an activation date of July 27, 2022.  **TT2A** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. Investigators believe **TT2A** is being used by "Paco," a suspected drug trafficker.

### ECPA

2.     The Court has jurisdiction to issue the proposed warrants under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is the Western District of Washington, a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### Pen Register Act

3.     Because this warrants seek the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or

AFFIDAVIT OF SA CHENG - 1
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrants are

2  designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

3        4.      The Court has jurisdiction to issue the requested pen-trap orders because

4  it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2).  Specifically, the

5  Court is a district court of the United States that "has jurisdiction over the offense being

6  investigated." 18 U.S.C. § 3127(2)(A)(i).

7        5.      This application includes all the information required by the Pen Register

8  Act.  *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1).  Namely, Exhibit 1 to this application is a

9  certification from Assistant United States Attorney Stephen Hobbs that (1) identifies the

10  Drug Enforcement Administration as the law enforcement agency conducting the

11  investigation and (2) certifies the information likely to be obtained is relevant to an

12  ongoing criminal investigation being conducted by that agency.  18 U.S.C. § 3122(b).

13  The Assistant United States Attorney is an "attorney for the government" as defined in

14  Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

15        6.      A "pen register" is "a device or process which records or decodes dialing,

16  routing, addressing, or signaling information transmitted by an instrument or facility

17  from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).

18  A "trap and trace device" is "a device or process which captures the incoming

19  electronic or other impulses which identify the originating number or other dialing,

20  routing, addressing, and signaling information reasonably likely to identify the source

21  of a wire or electronic communication."  18 U.S.C. § 3127(4).

22        7.      In the traditional telephone context, pen registers captured the destination

23  phone numbers of outgoing calls, while trap and trace devices captured the phone

24  numbers of incoming calls.  Similar principles apply to other kinds of wire and

25  electronic communications such as emails, text messages, connection logs, and data

26  transfers.  The prospective location data sought in this application constitutes "dialing,

27  routing, addressing, and signaling information" covered by the Pen Register Act.

28  Accordingly, the requested warrants will record, decode, and/or capture dialing,

AFFIDAVIT OF SA CHENG - 2
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  routing, addressing, and signaling information associated with the **Target Telephone**

2  without geographic limit.

3       8.      The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2)

4  and 3124(a)-(b), that the Court order through Attachments B of the requested warrant

5  that AT&T, and any other person or entity providing wire or electronic communication

6  service in the United States whose assistance may facilitate execution of this warrant

7  furnish, upon service of the warrant, information, facilities, and technical assistance

8  necessary to install the pen/trap, including installation and operation of the pen-trap

9  unobtrusively and with minimum disruption of normal service.  Any entity providing

10  such assistance shall be reasonably compensated by the Drug Enforcement

11  Administration, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in

12  providing facilities and assistance in furtherance of the warrant.

13       9.      This is the first application in this judicial district for a search warrant

14  authorizing disclosure of the above information for **Target Telephone 2A** in

15  connection with this investigation.

16       10.     **Through this application, the United States does not request and does**

17  **not seek to obtain the contents of any communications, as defined in 18 U.S.C.**

18  **§ 2510(8).**

19                    **INTRODUCTION AND AGENT BACKGROUND**

20       11.     I am a Special Agent (SA) with the Drug Enforcement Administration

21  (DEA), United States Department of Justice.  I have been so employed since August

22  2006.  In connection with my official DEA duties, I investigate criminal violations of

23  the federal narcotics laws, including but not limited to, Title 21, United States Code,

24  Sections 841, 843, 846, and 848.  I am currently assigned to the Bellingham Resident

25  Office of the DEA's Seattle Field Division.  My current assignment involves

26  investigations of high-level drug trafficking organizations within the Western

27  Washington area and elsewhere.

28

AFFIDAVIT OF SA CHENG - 3
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking.  I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants.  As a result, I have become familiar with methods of operation of drug traffickers and organizations.  As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of the distribution of controlled substances including fentanyl and its analogues, cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, heroin, marijuana, and other dangerous drugs.

13.     I have interviewed numerous drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users.  I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds.  I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, internet, pagers, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and mislead law enforcement investigations.  I have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ.  I have examined narcotics customers' supplier lists, pay/owe ledgers maintained by traffickers, and other documentation related to narcotics trafficking.  I have also examined documentation of various methods by which methamphetamine, cocaine, marijuana, heroin, and other illicit drugs are smuggled, transported, and distributed.  I have participated in hundreds of hours of surveillance of narcotics traffickers.  During surveillance, I have personally observed narcotics transactions, counter surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings.

AFFIDAVIT OF SA CHENG - 4
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14.     I have also participated in investigations that involved the interception of wire communications, including four investigations of large-scale drug trafficking organizations in which I was the case agent and each of which resulted in the conviction of approximately 20 individuals on federal drug-related charges.  In addition to these cases, I have participated in numerous other wiretap investigations in a variety of roles, including by conducting physical surveillance and monitoring intercepted communications.  I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance or by targets' statements.  Throughout my law enforcement career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers.

15.     Since this Affidavit is being submitted for the limited purpose of seeking authorization for the above requested search warrants, I have not included every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for a fair determination of probable cause to support the Application. When the statements of others are set forth in this affidavit, they are set forth in substance and in part.

16.     In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not meant to reflect the specific words or language used.

## SUMMARY OF PROBABLE CAUSE

Summary and Target Identifiers

17.     During the months of June and July 2022, investigators with the Whatcom Gang and Drug Task Force (WGDTF), Whatcom County Sheriff's Office (WCSO), Skagit County Interlocal Drug Enforcement Unit (SCIDEU), Washington State Patrol (WSP), and the Drug Enforcement Administration (DEA) Bellingham Resident Office and others investigated several individuals suspected of distributing

AFFIDAVIT OF SA CHENG - 5
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  fentanyl-laced powder, and other controlled substances, in the areas of Whatcom

2  County, Washington.

3       18.    In the following Application, the following target identifiers are

4  referenced:

| Target Number | Target Identifier | Description/User |
|---|---|---|
| Target Vehicle 1 (TV1) | CCH4108 - (WA) | A blue 2007 Nissan Altima, a suspected narcotics delivery vehicle, used by "Paco" |
| Target Vehicle 2 (TV2) | 6SIJ822 – (CA) | A black 2013 Range Rover, believed to be used by "Yolanda ORTIGOZA REYES", a narcotics coordinator. |
| Target Telephone 1 (TT1) | (360) 296-6558 | Phone number used by Yolanda ORTIGOZA REYES, a/k/a "Vanessa", a suspected narcotics broker/dispatcher. |
| Target Telephone 2 (TT2) | (360) 296-8260 | Phone number used by "Paco", a suspected narcotics dealer/delivery driver. |
| Target Device 1 (TD1) | Motorola Cell Phone | A green Motorola cell phone belonging to Wayne LANKHAAR. |
| Target Device 2 (TD2) | Samsung Cell Phone | A black Samsung cell phone belonging to Roderick PULLAR. |
| Target Location 1 (TL1) | 5451 North Gates Avenue Apartment 217, Fresno, California | Residence of Yolanda ORTIGOZA REYES |
| Target Location 2 (TL2) | 431 North Laventure Road, Mount Vernon, Washington | Residence of "Paco" |

     19.    During the month of June 2022, investigators conducted three undercover

controlled purchases of powdered fentanyl, each controlled purchase was for two

ounces, from an individual only identified as "Paco." During these controlled

AFFIDAVIT OF SA CHENG - 6
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    purchases, the undercover officer contacted a female identified as Yolanda ORTIGOZA

2    REYES to arrange the controlled purchase and met with "Paco" to obtain the drugs.

3    Investigators have obtained Washington State search warrants for location information

4    for "Paco's" phone, TT2, Paco's vehicle, TV1, ORTIGOZA REYES's phone, TT1, and

5    ORTIGOZA REYES's vehicle, TV2.  Based on the location data investigators have

6    identified that ORTIGOZA REYES's lives in Fresno, California, at TL1, and that

7    "Paco" lives in Mount Vernon Washington at TL2.  Investigators have also identified

8    that ORTIGOZA REYES also rents an apartment in Everett, Washington (TL12) that

9    investigators believe is unoccupied when ORTIGOZA REYES is in California.

10        20.    With the assistance of the court authorized location data for "Paco's"

11   vehicle (TV1) and phone (TT2), investigators have conducted extensive physical

12   surveillance of "Paco" and have observed a typical pattern of behavior for "Paco."

13   Investigators have observed that typically "Paco" leaves Mount Vernon, Washington, in

14   the early afternoon and drives to Whatcom County.  In Whatcom County "Paco" meets

15   often meets with suspected drug traffickers before parking in various open parking lots

16   or public parks before meeting additional suspected drug traffickers.  Investigators also

17   observed that "Paco" would return to Mount Vernon, Washington, in the early evening

18   hours.

19        21.    Investigators have observed "Paco" walk into multiple businesses, walk

20   around the store, frequently browsing the women's clothing section, and walk out

21   without purchasing anything.  Investigators suspect that "Paco" is conducting

22   countersurveillance while in these businesses, attempting to identify law enforcement

23   surveillance personnel.  Investigators have observed "Paco" parked in public parks,

24   often for multiple hours at a time, frequently remaining in his vehicle the whole time.

25   Additionally, many of the individuals that investigators have observed "Paco" meeting

26   have prior drug convictions and many of the residences visited by "Paco" are associated

27   to individuals with prior drug convictions or arrests.

28   //

AFFIDAVIT OF SA CHENG - 7
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

June 2022: First Controlled Purchase of Fentanyl-Laced Powder from "Paco"[1]

22.     During the first half of June 2022, a commissioned Washington State law enforcement officer acting in an undercover capacity (hereinafter referred to as the UC), conducted a controlled purchase of suspected fentanyl-laced powder. The UC met with a Hispanic male identified only as "Paco" at a location in Whatcom County, Washington. The UC obtained a quantity of suspected fentanyl-laced powder from "Paco" in exchange for pre-recorded WGDTF buy funds. During this transaction a confidential source (CS) working for the government was present.  The interaction was recorded using covert video and audio recording devices. [2]

23.     Following the controlled purchase, investigators watched as "Paco" got into a blue 2007 Nissan Altima bearing WA/CCH4108 (hereinafter Target Vehicle 1 or TV1). A records check of TV1 through the Washington State Department of Licensing showed the vehicle was registered to "NATALIA ROJAS RIVERA" at 429 North Laventure Road, Mount Vernon, Washington. Investigators watched as "Paco" made short stops at various locations in Whatcom County and Skagit County, Washington. Investigators saw "Paco" park TV1 in the area of 429 North Laventure Road in Mount Vernon, Washington, and walk into a residence at 431 North Laventure Road in Mount Vernon, Washington (Target Location 2).

24.     Following the controlled purchase, the UC exchanged text messages with the user of (360) 296-6558 (hereinafter Target Telephone 1 or TT1). The UC referenced the prior meeting, as well as a future meeting, with the user of TT1. The user of TT1 identified herself as "Vanessa."  As discussed below, investigators later identified the user of TT1 as Yolanda ORTIGOZA REYES.

25.     The suspected fentanyl-laced powder, which was purple in color, was tested by investigators using a ThermoFisher Scientific brand "TruNarc" Raman

---

[1] In this affidavit, the exact date and location of certain events are not specified in order to protect the identity of confidential sources and undercover officers.

[2] A Washington State administrative wire order was granted prior to capturing the covert recordings.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Handheld scanner.[3] The investigator who conducted the test using the device was certified in its use. The scan indicated the powder contained fentanyl.  As depicted below, the suspected fentanyl powder was wrapped in cellophane.  As discussed below, this packaging is consistent with other drugs seized during this investigation.



June 2022: Second Controlled Purchase of Fentanyl-Laced Powder from "Paco"

26.      During the first half of June 2022, a UC conducted another controlled purchase of fentanyl-laced powder. Prior to the controlled purchase, the UC communicated with ORTIGOZA REYES, who was using TT1. The UC arranged to purchase an amount of fentanyl-laced powder for an agreed upon amount of money. In a phone call, the UC spoke with ORTIGOZA REYES, who sounded to be a female with a Hispanic accent. ORTIGOZA REYES communicated with the UC regarding how the meeting would take place, the location the meeting would occur, and the price.

27.      Investigators then watched as "Paco", driving TV1, arrived at the pre-determined location in Whatcom County agreed upon by ORTIGOZA REYES and the UC. The UC met with "Paco." The UC obtained a quantity of suspected fentanyl-laced

---

[3] According to the ThermoFischer Scientific website, the "TruNarc" Handheld Raman scanner utilizes a Raman spectroscopy scan to identify chemicals. https://www.thermofisher.com/order/catalog/product/TRUNARC

1 powder from "Paco" in exchange for pre-recorded DEA buy funds. The interaction was
2 recorded using covert video and audio recording devices.  The fentanyl powder
3 provided to the UC by "Paco" was purple in color and the packaging was consistent
4 with that of the first controlled purchase.

5       28.    "Paco" and the UC discussed ORTIGOZA REYES, as well as other
6 controlled substances available for purchase through "Paco" or ORTIGOZA REYES.
7 "Paco" said ORTIGOZA REYES was currently in California. "Paco" drove from the
8 area in TV1.

9       29.    Investigators submitted the suspected fentanyl-laced powder to the DEA
10 Western Regional Laboratory for analysis.  A laboratory analysis of the substance
11 indicated that it had a net weight of 47.7 grams and tested positive for the presence of
12 Fentanyl.[4]

13 June 2022: Location Information from TT1, TT2, and TV1

14       30.    On June 13, 2022, the Honorable Whatcom County Superior Court Judge
15 Evan Jones approved a search warrant authorizing the placement and monitoring of an
16 electronic tracking device on TV1 believed to be driven by "Paco". On June 17, 2022,
17 investigators placed a tracking device onto TV1 and began monitoring the location data.

18       31.    On June 13, 2022, the Honorable Whatcom County Superior Court Judge
19 Evan Jones approved search warrants and court orders that included the disclosure of
20 real-time Prospective Location Information (PLI) for TT1 (ORTIGOZA REYES) and
21 TT2 ("Paco") by Verizon, as well as authority to install a Pen Register and Trap &
22 Trace on TT1 and TT2, which could show the identifiers for incoming and outgoing
23 calls made and received by those target numbers. Investigators subsequently served the
24 court orders and search warrants on Verizon, and began receiving location and
25 telephonic contact information related to TT1 and TT2 in the following days.

26

27

28

---

[4] Most of the drug seizures described in this affidavit are being maintained as evidence by the Whatcom County Sheriff's office.  As of July 16, 2022, this exhibit is the only one for which a laboratory analysis has been completed.

AFFIDAVIT OF SA CHENG - 10
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     Investigators noted that location information for TT1 (ORTIGOZA REYES) showed it was in the area of Fresno, California.

33.     Investigators monitored the location information for TT2 ("Paco"), as well as the information received from the vehicle tracker affixed to TV1. Investigators noted that between June 17, 2022, and June 27, 2022, TV1 went from the area of 431 North Laventure Road, Mount Vernon, Washington (Target Location 2), to various locations in Whatcom County, Washington. Location information for TT2 appeared to follow the movements of TV1, indicating to investigators that the male known as "Paco" was using both TV1 and TT2 on a daily basis during that timeframe.

34.     Using both physical surveillance and location information from TV1, investigators saw TV1 going to multiple addresses in Whatcom County, Washington, that were known to investigators due to their involvement in criminal activity.  Many of these locations will be discussed below.

June 2022: Remote Surveillance Camera Installation

35.     On June 24, 2022, investigators installed a remotely recorded video surveillance system with a view of the roadway and parking areas in front of 431 North Laventure Road in Mount Vernon, Washington (Target Location 2).

Identification of Target Vehicle 2

36.     On June 26, 2022, location information for TT1 (ORTIGOZA REYES) indicated that it had started travelling north from Fresno, California, to Washington. TT1 continued northbound until arriving in the area of Everett, Washington, at approximately 12:31 AM on June 27, 2022. TT1 remained in that area until approximately 11:48 AM on June 27, 2022, when the device again began moving northbound.  At approximately 12:15 PM on June 27, 2022, location information for TT1 showed it was in the general area of Laventure Road, Mount Vernon, Washington.

37.     Via a remote surveillance camera, investigators observed that at approximately 12:13 PM, a black Range Rover SUV (hereinafter Target Vehicle 2 or TV2) arrive and park in front of 431 Laventure Road, Mount Vernon, Washington

AFFIDAVIT OF SA Cheng - 11
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(Target Location 2). Shortly after arriving, a female, later identified as Yolonda ORTIGOZA REYES, with black hair could be observed walking from TV2 and walking towards 431 North Laventure Road, Mount Vernon, Washington (Target Location 2). At approximately 1:46 PM, ORTIGOZA REYES could be seen walking back towards TV2 while speaking with a male. ORTIGOZA REYES appeared to leave the area in TV2. Location information for TT1 showed the device moved south back to the area of Everett, Washington, at around that time. Investigators believe, based on the location information and remotely recorded footage, that ORTIGOZA REYES, driving TV2 had arrived at 431 North Laventure Road, Mount Vernon, Washington (Target Location 2) and met with "Paco".

38.    On June 28, 2022, location information for TT1 (ORTIGOZA REYES) moved from the area of Everett, Washington, back to the area of Laventure Road in Mount Vernon, Washington. Investigators drove by 431 North Laventure Road, Mount Vernon, Washington (Target Location 2) and observed TV2 parked along the street near 431 North Laventure Road, Mount Vernon, Washington (Target Location 2). Investigators observed TV2 was bearing California license plate 6SIJ822, which was registered to Yolanda ORTIGOZA REYES at 5451 N Gates Ave, Apartment 217, Fresno, California (Target Location 1). The license plate was listed as belonging to a 2013 Land Rover.

39.    According to Drug Enforcement Administration (DEA) records, in 2015 TV2 was present at a federal search warrant at an address in Fresno, California. During that search warrant, Rigoberto CASTRO GARCIA was arrested and interviewed by federal investigators. Approximately $9,000 in US currency was located during the execution of the federal search warrant. While being interviewed, Rigoberto CASTRO GARCIA admitted to coordinating the delivery of heroin to customers in Tacoma, Washington.

40.    That same day, investigators located TV1 and observed "Paco" as the driver of TV1 and ORTIGOZA REYES as a passenger. Investigators positively

AFFIDAVIT OF SA CHENG - 12
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

identified the female as ORTIGOZA REYES via her California driver's license photograph. While ORTIGOZA REYES was being watched by investigators, the UC called TT1 and spoke with ORTIGOZA REYES. Investigators watched as ORTIGOZA REYES, who was sitting in TV1, picked up her phone as the UC was calling. The UC had a conversation with ORTIGOZA REYES to coordinate a future purchase of fentanyl-laced powder. Based on these observations, investigators believe that ORTIGOZA REYES is the user of TT1.

June 2022: Third Controlled Purchase of Fentanyl-Laced Powder from "Paco"

41.     In late June 2022, a UC conducted another controlled purchase of suspected fentanyl-laced powder. Prior to the controlled purchase, the UC communicated with ORTIGOZA REYES on TT1. The UC arranged to purchase an amount of fentanyl-laced powder for an agreed upon amount of money. In a phone call, the UC spoke with ORTIGOZA REYES.  As discussed above, investigators observed ORTIGOZA REYES answer this call.

42.     Investigators watched as "Paco", driving TV1, arrived at the pre-determined location in Whatcom County agreed upon by ORTIGOZA REYES and the UC. Investigators observed "Paco" and the UC walk into the store restroom shortly after one another.  The UC obtained a quantity of suspected fentanyl-laced powder from "Paco" in exchange for pre-recorded DEA buy funds in the restroom. The interaction was recorded using covert video and audio recording devices.  The fentanyl powder provided to the UC by "Paco" was purple in color and the packaging was consistent with that of the first two controlled purchases.

//
//
//
//
//
//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



July 25, 2022: Arrest of Yolonda ORTIGOZA REYES

43.      During the months of June and July 2022, investigators conducted extensive physical surveillance of "Paco" as he travelled throughout Whatcom County and conducted numerous suspected drug transactions.  Investigators conducted numerous stops of individuals who were observed meeting with "Paco" and seized drugs during many of these stops.  Investigators obtained multiple statements from individuals and observed stored text messages on the phones of some of these individuals which corroborated the observations of investigators.

44.      In July 2022, United States Magistrate Judge Paula L. McCandlis signed search warrants authorizing the search of multiple residences and vehicles in Western Washington, included in those locations was "Paco's," Nissan Altima (TV1).

45.      In the days preceding July 25, 2022, the same undercover officer was telephonically in communication with ORTIGOZA REYES and arranged the delivery of six ounces of fentanyl powder and 2,000 fentanyl pills.  During these conversations, ORTIGOZA REYES told the UC that "Paco" was visiting family.

AFFIDAVIT OF SA CHENG - 14
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      46.    On July 25, 2022, ORTIGOZA REYES was placed under arrest by

2  uniformed officers. "Paco" was not arrested at this time and has not been seen by

3  investigators since approximately July 22, 2022.

4      47.    Pursuant to a search warrant, investigators searched TV1 and recovered

5  approximately 440 gross grams of suspected fentanyl powder, 450 gross grams of

6  suspected fentanyl pills, and 110 grams of suspected heroin and three cell phones, an

7  iPhone 13, iPhone 12 and Samsung cell phone.

8      48.    ORTIGOZA REYES was transported to the DEA Bellingham Office

9  where she was interviewed.  ORTIGOZA REYES was read her Miranda Rights and

10  agree to speak to investigators.  ORTIGOZA REYES admitted that the drugs in her

11  backpack were to be delivered to someone.  ORTIGOZA REYES identified a phone

12  number in her Samsung cell phone for "Paco" saved under the name "Paco 2" with

13  phone number 360-296-8260 (TT2).  This is the same phone number provided to the

14  UC by "Paco" during a transaction in June 2022.  ORTIGOZA REYES stated that she

15  had another number for "Paco" saved on her iPhone, under the contact name "Martin"

16  with the phone number 360-873-9649.

17  July 25, 2022: Search Warrant Execution at 431 North Laventure Road, Mount Vernon

18      49.    Also included in the search warrants signed in July 2022 was a search

19  warrant for "Paco's" residence, 431 North Laventure Road, Mount Vernon,

20  Washington.

21      50.    On July 25, 2022, investigators executed the search warrant at "Paco's"

22  residence.  Nobody was present at the search warrant was executed.  Individuals did

23  arrive while investigators were at the location, none of these individuals matched the

24  description of "Paco."  Seized from a bedroom during that search was two firearms,

25  approximately 5 kilograms of suspected fentanyl pills, 6 kilograms of suspected

26  fentanyl powder, 1 kilogram of suspected heroin, and 800 grams of suspected

27  methamphetamine.

28

AFFIDAVIT OF SA CHENG - 15
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        51.    Also located in the same bedroom was a Bank of America debit card,

2 which expired in March 2022 in the name Martin Gonzalez Perez with a photograph.

3 The individual in the photograph is consistent in appearance to "Paco." Also located in

4 the same bedroom was multiple IRS 1042-S forms, which is for "Foreign Person's U.S.

5 Source Income Subject to Withholding" documenting earnings at the Tulalip Resort

6 Casino in the name "MARTIN PEREZ GONZALEZ" with the listed address of "333 W

7 LAUREL DR APT 15, SALINAS, MEXICO US 93906."

8 Identification of TT2A

9        52.    According to AT&T records, 360-873-9649 is subscribed to "MARTIN

10 GONZALEZ PEREZ" at "333 W LAUREL DR APT 15, SALINAS,CA 93906" with

11 an activation date of March 12, 2022. This is also the same name and address that

12 would found on the documents at "Paco's" residence in Mount Vernon, Washington

13 during the search.

14        53.    Based on a common call analysis of multiple cell phones in contact with

15 "Paco's" 360-873-9649, investigators identified 831-225-4486 (**TT2A**) as a likely new

16 phone for "Paco."

17        54.    According to AT&T records, 831-225-4486 (**TT2A**) is subscribed to

18 "ROMEO GONZALEZ PEREZ" at "333 W LAUREL DR , Salinas, CA 93906" with

19 an activation date of July 27, 2022. Investigators observed the subscribers for 360-873-

20 9649 and 831-225-4486 have the same last name "GONZALEZ PEREZ" and the same

21 street address 333 W Laurel Drive, Salinas California. Investigators also observed that

22 831-225-4486 (**TT2A**) was activated on July 27, 2022, two days after the arrest of

23 ORTIGOZA REYES and the search of "Paco's" residence in Mount Vernon,

24 Washington.

25        55.    A toll analysis showed that between July 27, 2022 and August 1, 2022,

26 "Paco's" 831-225-4486 (**TT2A**) contacted sixteen distinct phone numbers. Of those

27 sixteen phone numbers, eight numbers, or half of the numbers contacted by **TT2A** were

28 also in contact with "Paco's" 360-873-9649. Further, one of the phone numbers

AFFIDAVIT OF SA Cheng - 16
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

contacted by **TT2A** between July 27, 2022, and August 1, 2022, was 360-540-3584. According to T-Mobile records, 360-540-3584 is subscribed to "CLARIBEL L ROJAS" at "429 N LAVENTURE RD  MOUNT VERNON  WA 98273 USA."  429 North Laventure Road, Mount Vernon, Washington, is the southern unit of the duplex to which "Paco's" residence, 431 North Laventure Road, Mount Vernon, Washington is connected.

56.     Base don the above analysis, investigators believe that 831-225-4486 (**TT2A**) is being used by "Paco".

### KNOWLEDGE BASED ON TRAINING AND EXPEREINCE

57.     Based on my training, experience, and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, to include their use of cellular phones and other electronic communication devices to facilitate their trafficking activity.  I know drug traffickers use cellular phones to communicate with suppliers, re-distributors, and customers.  These communications via cellular phone often include discussing details around drug deals such as time and place of drug transactions, types of drugs, amounts of drugs, methods of payment for drugs, and quality of drugs sold or bought, amongst other things.  I know that it is common for drug traffickers to use multiple phones as well as change phone numbers regularly. They use different telephones to help compartmentalize their drug trafficking activities. This might entail using specific phones for their personal life and other phones for drug activity. Or it might include using different phones for different individuals or aspects of their business, such as using certain phones to contact suppliers and other phones to contact redistributors.  This compartmentalizing is especially common for individuals in leadership positions. Drug traffickers often try to keep the various components and organization members separate to protect parts of the organization from detection by law enforcement.  For example, if one individual or arm of a drug trafficking organization (DTO) is arrested or seeks to assist law enforcement, that person could do

AFFIDAVIT OF SA Cheng - 17
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  less damage to the organization if the leadership limits what he or she knows about

2  other parts of the DTO.  Drug traffickers also use multiple cell phones to frustrate law

3  enforcement interception and monitoring.  Where there are multiple cell phones, law

4  enforcement may learn of one part of the organization's activities by intercepting one

5  phone, but they would not receive information as to the overall activities of the DTO.

6  Thus, the use of multiple cell phones helps the survival of the overall organization.

7      58.    Based on my training and experience, I know each cellular device has one

8  or more unique identifiers embedded inside it.  Depending on the cellular network and

9  the device, the embedded unique identifiers for a cellular device could take several

10  different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic

11  Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber

12  Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network

13  Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an

14  International Mobile Equipment Identity ("IMEI"). The unique identifiers -- as

15  transmitted from a cellular device to a cellular antenna or tower -- can be recorded by

16  pen-traps and indicate the identity of the cellular device making the communication

17  without revealing the communication's content.

18      59.    Based on my training and experience, I know that when a cell phone

19  connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the

20  cellular antenna or tower, and the cellular antenna or tower records those identifiers as a

21  matter of course.  The unique identifiers -- as transmitted from a cell phone to a cellular

22  antenna or tower -- are like the telephone number of an incoming call.  They can be

23  recorded by pen-trap devices and indicate the identity of the cell phone device making

24  the communication without revealing the communication's content.  In addition, a list

25  of incoming and outgoing telephone numbers is generated when a cell phone is used to

26  make or receive calls, or to send or receive text messages (which may include

27  photographs, videos, and other data). These telephone numbers can be recorded by pen-

28

AFFIDAVIT OF SA CHENG - 18
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  trap devices and then used to identify the parties to a communication without revealing

2  the communication's contents.

3      60.    Based my training and experience, I know that a cell phone can also be

4  used to exchange text messages with email accounts.  The email addresses associated

5  with those text messages can be recorded by pen-trap devices and then used to identify

6  parties to a communication without revealing the communication's contents.

7      61.    Based on my training and experience, I know that cellular phones can

8  connect to the internet via a cellular network.  When connecting through a cellular

9  network, internet communications sent and received by the cellular phone each contain

10  the same unique identifier that identifies cellular voice communications, such as an

11  ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a

12  cellular phone also contain the IP address associated with that cellular phone at the time

13  of the communication.  Each of these unique identifiers can be used to identify parties

14  to a communication without revealing the communication's contents.

15      62.    In my training and experience, I have learned that T-Mobile, AT&T,

16  Verizon Wireless, and Sprint are companies that provide cellular telephone access to

17  the general public.  I also know that certain providers of cellular telephone service have

18  technical capabilities that allow them to collect and generate information about the

19  locations of the cellular telephones to which they provide service, including E-911

20  Phase II data (also known as GPS data or latitude-longitude data) and cell-site data

21  (also known as "tower/face information" or cell tower/sector records).  E-911 Phase II

22  data provides relatively precise location information about the cellular telephone itself,

23  either via GPS tracking technology built into the phone or by triangulating on the

24  device's signal using data from several of the provider's cell towers.  Cell-site data

25  identifies the cell towers (i.e., antenna towers covering specific geographic areas) that

26  received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e.,

27  faces of the towers) to which the telephone connected.  These towers are often a half-

28  mile or more apart, even in urban areas, and can be 10 or more miles apart in rural

AFFIDAVIT OF SA CHENG - 19
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   areas.  Furthermore, the tower closest to a wireless device does not necessarily serve

2   every call made to or from that device.  Accordingly, cell-site data is typically less

3   precise that E-911 Phase II data.

4       63.     Based on my training and experience, I know that T-Mobile, AT&T,

5   Verizon Wireless, and Sprint, can collect E-911 Phase II data about the location of the

6   Target Telephones, including by initiating a signal to determine the location of the

7   Target Telephones on their networks (T-Mobile, AT&T, Verizon Wireless, and Sprint)

8   or with such other reference points as may be reasonably available.

9       64.     When using a cellular connection to receive or transmit data, a cellular

10  phone typically utilizes a cell tower to make telephone calls, send or receive text

11  messages, send or receive emails, surf the internet, carry out application initiated data

12  transfers, among other things.

13      65.     Based on my training and experience, I know that T-Mobile, AT&T,

14  Verizon Wireless, and Sprint can collect cell-site data about the Target Telephone.

15  Based on my training and experience, I know that for each communication (including

16  data connections) a cellular device makes, its wireless service provider can typically

17  determine: (1) the date and time of the communication; (2) the telephone numbers

18  involved, if any; (3) the cell tower to which the customer connected at the beginning of

19  the communication; (4) the cell tower to which the customer connected at the end of the

20  communication; and (5) the duration of the communication.  I also know that wireless

21  providers such as T-Mobile, AT&T, Verizon Wireless, and Sprint typically collect and

22  retain cell-site data pertaining to cellular devices to which they provide service in their

23  normal course of business in order to use this information for various business-related

24  purposes.

25      66.     Different service providers use different systems, applications, and reports

26  to collect or analyze cell site data.  These systems, applications, and reports are referred

27  to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon),

28  Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD"

AFFIDAVIT OF SA CHENG - 20
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   (Sprint), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE,

2   Timing Advance, and TruCall.  RTT data, for example, estimates the approximate

3   distance of the cellular device from a cellular tower based upon the speed with which

4   signals travel between the device and the tower.  This information can be used to

5   estimate an approximate location range that is more precise than typical cell-site data.

6       67.     Based on my training and experience, I know that wireless providers such

7   as T-Mobile, AT&T, Verizon Wireless, and Sprint typically collect and retain

8   information about their subscribers in their normal course of business.  This information

9   can include basic personal information about the subscriber, such as name and address,

10  and the method(s) of payment (such as credit card account number) provided by the

11  subscriber to pay for wireless communication service.  I also know that wireless

12  providers such as T-Mobile, AT&T, Verizon Wireless, and Sprint typically collect and

13  retain information about their subscribers' use of the wireless service, such as records

14  about calls or other communications sent or received by a particular device and other

15  transactional records, in their normal course of business.  In my training and

16  experience, this information may constitute evidence of the crimes under investigation

17  because the information can be used to identify the Target Telephone' user or users and

18  may assist in the identification of co-conspirators and/or victims.

19      68.     Modern cell phones allow users to switch their telephone numbers, use

20  multiple telephone numbers on a single device, and transfer their telephone number to a

21  different cell phone.  These changes can be made with the assistance of the wireless

22  provider or by taking actions such as changing the "SIM card" (short for "subscriber

23  identity module card") of a cellphone.  To provide for any such changes made to the

24  Target Telephone, Attachment A specifies that the property to be searched includes:

25  (i) any instrument to which the listed target telephone number was assigned within the

26  last 30 days, and that now has been assigned a changed telephone number, (ii) any

27  changed telephone number assigned to an instrument now bearing the same unique

28  identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number

AFFIDAVIT OF SA CHENG - 21
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  listed above, or that was bearing the same unique identifying number as the telephone

2  number listed above, at any point within the last 30 days, (iii) any changed unique

3  identifying number subsequently assigned to the same telephone number, or (iv) any

4  additional changed telephone number and/or unique identifying number, whether the

5  changes occur consecutively or simultaneously, listed to the same subscriber and

6  wireless telephone account number as the telephone numbers listed above, within the

7  period of disclosure authorized by this warrant.

8  **AUTHORIZATION REQUEST FOR TARGET TELEPHONE**

9       69.    Based on the fact set forth in this affidavit, there is probable cause to

10  conclude that violations of 21 U.S.C §841 and §846 (distribution of controlled

11  substances and conspiracy to distribute controlled substances) have been committed, are

12  being committed, and will be committed by "Paco" the user of **TT2A** and others who

13  are known and unknown.  The requested information, including prospective location

14  information for **Target Telephone 2A** will help law enforcement monitor the user of

15  the Target Telephone, follow their movements when they are at locations that are

16  otherwise hard for law enforcement to observe, and identify other coconspirators,

17  sources of supply, storage locations, and other people and places of evidentiary value.

18  There is probable cause to believe that the use of the investigative technique described

19  by the warrant will result in officers learning that identifying information.

20       70.    Based on the foregoing, I request that the Court issue the proposed search

21  warrant and pen-trap order for the Target Telephone, i.e., for AT&T, pursuant to

22  Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and  18 U.S.C. § 3123.

23       71.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of

24  Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant

25  to delay notice to the subscriber or user of the Target Telephone until 90 days after the

26  collection authorized by the warrant has been completed.  There is reasonable cause to

27  believe that providing immediate notification of the warrant may have an adverse result,

28  as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of

AFFIDAVIT OF SA CHENG - 22
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachments B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

72.     I further request that the Court direct AT&T to disclose to the government any information described in Attachments B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachments B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Telephone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The agency shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

//
//
//
//
//
//
//
//
//

AFFIDAVIT OF SA CHENG - 23
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      73.    Pursuant to 18 U.S.C. § 2703(g), the government will execute these

2  warrants by serving the warrants on AT&T.  Because the warrant will be served on

3  AT&T, who will then compile the requested records and data, reasonable cause exists

4  to permit the execution of the requested warrant at any time in the day or night.  I

5  therefore request that the Court authorize execution of the warrant at any time of day or

6  night, owing to the potential need to locate the Target Telephone outside of daytime

7  hours.

8

9

10                              Joseph Cheng

                            Special Agent

11                              Drug Enforcement Administration

12

13

14      The above-named agent provided a sworn statement attesting to the truth of the

15  contents of the foregoing affidavit on the 15th day of August, 2022.

16

17

18                              PAULA L. McCANDLIS

19                              United States Magistrate Judge

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**EXHIBIT 1**

2

DECLARATION

3    I, STEPHEN HOBBS, declare as follows:

4    1.    I am a duly appointed Assistant United States Attorney for the Western

5  District of Washington, and I have primary responsibility for representing the interests of

6  the United States herein.

7    2.    I make this declaration in support of an application for a search warrant

8  pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with

9  an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

10   3.    Pursuant to 18 U.S.C. § 3122(b), I certify that the DEA is the law

11  enforcement agency conducting the investigation in this matter and that the information

12  likely to be obtained from the requested warrant is relevant to an ongoing criminal

13  investigation being conducted by that agency.

14    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

15  Application is made on the basis of information officially furnished, and on that basis I

16  verily believe such information to be true.

17    Executed this 15th day of August, 2022.

18
              *s/ Stephen Hobbs*
19           _____
              STEPHEN HOBBS
20            Assistant United States Attorney

21

22

23

24

25

26

27

Exhibit 1 - Declaration -- PAGE 1

USAO 2021R1079

**ATTACHMENT A**

**Property to Be Searched and Subscriber/Subject Information**

1.        Records and information associated with the cellular phone assigned call number 831-225-4486, with listed subscriber "ROMEO GONZALEZ PEREZ" (the "Target Cell Phone"), that are in the custody or control of AT&T Wireless, a company headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.  The subscriber/customer of the Target Cell Phone is "ROMEO GONZALEZ PEREZ".  The identity of the person who is the subject of the criminal investigation is unknown.

1.        The Target Cell Phone.

2.        The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data , and prospective E-911/GPS and cell site triangulation information regarding the Target Cell Phone.  **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

**I.     Section I:  Information to be Disclosed by AT&T**

1.     **Subscriber/Account Information.**  The following non-content information about the customers or subscribers associated with the Account listed in Attachment A:

    a.     Names (including subscriber names, user names, and screen names);

    b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    c.     Local and long distance telephone connection records from July 27, 2020, to the present;

    d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions from July 27, 2020, to the present;

    e.     Length of service (including start date) and types of service utilized;

    f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

g.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 days.**

a.    AT&T shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

(i)    IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

(ii)    Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

(iii)    IP addresses of any websites or other servers to which the cell phone device or devices connected; and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(iv)   Source and destination telephone numbers and email addresses.

b.   On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, AT&T shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices:  published or non-published subscriber names and addresses, including billing addresses.

3.   **Historical Cell Site Location Information.**

a.   All records and other information (**<u>not</u> including the contents of communications**) relating to wire and electronic communications sent or received by the Account from July 27, 2020, to the present, including:

i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.   historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.  This information is to be provided irrespective of the application, name, or report utilized by the AT&T.  Accordingly, this information includes the following data sets to the extent that they are collected by the AT&T: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.   The physical address and coverage maps of cell towers used by the Target Cell Phone.

4.   **Prospective Cell Site Location Information.**

a.   All information about the location of the Target Cell Phone described in Attachment A for **<u>a period of 45 days</u>**, during all times of day and night. This information includes: precise location information, as well as all data about which

"cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.  This information also includes the following data sets to the extent that they are collected by the AT&T: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.      The physical address and coverage maps of cell towers used by the Target Cell Phone.

5.      **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.      All information about the location of the Target Cell Phone described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.      The physical address and coverage maps of cell towers used by the Target Cell Phone.

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government pursuant to this warrant.  In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services.  The government shall compensate AT&T for reasonable expenses incurred in furnishing such

facilities or assistance.

## II.   <u>Section</u> II:  Information to Be Seized by the Government

1.      All information described above in Section I that constitutes evidence of violations of 21 USC § § 841 & 846 involving unidentified subject "Paco".

2.      All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.      All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.      Location Information regarding the Target Cell Phone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the AT&T in order to locate the things particularly described in this Warrant.

Attachment B -- PAGE 5

USAO 2021R1079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970